**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| KENDRICK BENNETT, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| | : | CIVIL ACTION |
| v. | : | No: 06-1393 |
| | : | |
| JULIE KNAUER AND | : | |
| DR. FELIPE ARIAS, | : | |
| | : | |
| Defendants. | : | |

## EXPLANATION AND ORDER

Plaintiff Kendrick Bennett brings this civil rights and state law medical negligence action against Defendants Julie Knauer, Healthcare Administrator at SCI Graterford, and Dr. Felipe Arias, Medical Director at SCI Graterford for the Pennsylvania Department of Corrections. Bennett seeks relief from Defendants' alleged civil rights violations pursuant to 42 U.S.C. §§ 1983, 1985, and 1986 based upon the claim that Defendants violated his Eighth Amendment and Fourteenth Amendment rights.[1]  Jurisdiction is proper under 28 U.S.C. §§ 1331, 1343, and 1367. Defendants, in separate motions, moved for summary judgment as to all counts.  Because Bennett does not raise or discuss his state law medical negligence claim and claims pursuant to

---

[1] It appears that Plaintiff references the Fourteenth Amendment only as a vehicle for making the Eighth Amendment applicable to state actors.  If Plaintiff intended to raise a separate Fourteenth Amendment claim, I consider this claim withdrawn due to Plaintiff's failure to address this claim in his responses to Defendants' motions for summary judgment.

1

42 U.S.C. §§ 1985 and 1986, I will consider those claims withdrawn.[2]  Accordingly, the sole

matter before me is whether there exists a legally sufficient evidentiary basis for Bennett's claim

that Defendants violated his Eighth Amendment rights pursuant to 42 U.S.C. § 1983.

## I.  FACTUAL BACKGROUND

For purposes of summary judgment, "the nonmoving party's evidence 'is to be believed,

and all justifiable inferences are to be drawn in [that party's] favor.'"  *Hunt v. Cromartie*, 526

U.S. 541, 552 (1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Here, the facts are stated in the light most favorable to the plaintiff, and all reasonable inferences

are drawn in Plaintiff's favor.  *Anderson*, 477 U.S. at 255.

On March 13, 2004, Bennett was shot in the leg.  A doctor placed Bennett's leg in a cast

because he had a comminuted fracture of his left tibia and fibula.  Bennett was treated by an

orthopedist, Dr. Lutz, who stated that Bennett would need surgery but could not get surgery until

his wound healed.  Dr. Lutz did not give Bennett an exact date when he should expect to have

surgery.

On June 24, 2004, Bennett was incarcerated in SCI Graterford due to a parole violation.

Bennett was released from incarceration on April 20, 2005.  It is during this 10 month period of

incarceration that Bennett claims Defendants violated his rights.

Upon entering SCI Graterford, Bennett was given a full medical exam.  His wound had

---

[2]  In Plaintiff's Answer to Motion for Summary Judgment of Defendant, Felipe Arias, M.D., Plaintiff withdrew two claims.  He withdrew his claim that "Defendants individually and in concert had conspired with each other and deprived Plaintiff of his civil rights because of racial and ethnic animus toward Plaintiff, an African-American citizen of the United States." This appears to be a withdraw of his claims under 42 U.S.C. §§ 1985 and 1986.  Additionally, Bennett withdrew his state law negligence claim.

not yet healed and therefore Bennett was not ready for surgery.  Bennett was released into the general population and given a pair of crutches because he had a cast on his leg.

Bennett was familiar with the sick call procedures at SCI Graterford and at no time was he ever denied a visit to sick call.  Bennett went to sick call many times during his imprisonment.[3]

Bennett complained of pain in his leg during incarceration.  Throughout his stay at SCI Graterford, Bennett was given Naprosyn, Motrin, and Ibuprofen for the pain.

While incarcerated, Bennett made several requests to have surgery.[4]  Additionally, on March 12, 2005 and March 15, 2005 Bennett filed grievances in which he requested surgery. Bennett never received surgery during his imprisonment.

During his imprisonment, Bennett was given several x-rays.  X-rays were taken of Bennett's leg on the following dates: June 24, 2004, June 25, 2005, July 19, 2004, September 9, 2004, September 20, 2004, November 9, 2004, December 15, 2004, January 4, 2005, and February 10, 2005.

In addition to the x-rays, Bennett received a variety of other medical services while in prison.

•      On July 19, 2004, Defendant Arias consulted with the orthopedist, Dr. Lutz, who had
        been treating Bennett prior to his imprisonment.  Dr. Lutz suggested that Bennett's cast

_____

[3]  Bennett estimated in his deposition testimony that he attended sick call approximately 30-40 times.  However, the record of visits to sick call demonstrates that Bennett actually attended fewer times.

[4]  Bennett requested surgery on July 12, 2004, July 22, 2004, March 10, 2005, April 11, 2005, and April 13, 2005.

should stay on and recommended x-rays to determine when the cast could be removed.

- On July 28, 2004, Bennett was sent to Mercy Suburban Hospital where he was evaluated by Dr. Mandel.  At that appointment, Dr. Mandel did not mention surgery.

  On September 23, 2004, Bennett saw Dr. McHugh and had his cast removed.  McHugh did not mention surgery during this visit.  McHugh did suggest that Bennett receive an x-ray and follow up exam if he experienced pain.  McHugh also recommended physical therapy, which was approved by Defendant Arias.[5]

- On November 2, 2004, daily dressing changes were ordered for Bennett's wound on his shin.

- On March 10, 2005, Bennett again visited Dr. McHugh who noted that Bennett had a non-union fracture of his left tibia and recommended surgery.  Defendant Arias approved the surgery on March 11, 2005.

- On April 20, 2005, Bennett was released from SCI Graterford.  While in prison he never underwent surgery on his leg and no surgery was ever scheduled.[6]

- On June 8, 2005, approximately two months after his release from prison, Dr. Lutz performed surgery on Bennett's leg.[7]

---

[5]  Plaintiff attended physical therapy while at SCI Graterford, but did not attend all of his sessions because he believed they were not working.

[6]  Defendant Arias contends that surgery was scheduled for the fourth week in April, but Bennett was released before surgery could occur.  Defendant Arias supports this claim with a notation in the progress notes that states "surgery scheduled for 4th week of April- Knauer." Plaintiff disagrees with Defendant Arias' interpretation of this notation and alleges that it was a response to a grievance Bennett filed and that no surgery was ever scheduled.

[7] Bennett alleges that it took two months for him to get surgery on his leg after his release from prison because of insurance issues.

4

## II. LEGAL STANDARD

Summary judgment should be granted under Federal Rule of Civil Procedure 56(c) "if, after drawing all reasonable inferences from the underlying facts in the light most favorable to the non-moving party, the court concludes that there is no genuine issue of material fact to be resolved at trial and the moving party is entitled to judgment as a matter of law." *Kornegay v. Cottingham*, 120 F.3d 392, 395 (3d Cir. 1997). A factual dispute is "genuine" if the evidence would permit a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). In order to survive summary judgment, a plaintiff must make a showing "sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must draw all reasonable inferences in the non-moving party's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

This is a § 1983 claim based upon Plaintiff's allegation that Defendants violated his Eighth Amendment rights while he was incarcerated due to their failure to provide him with adequate medical care, specifically their failure to operate on his broken leg. The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." The Eighth Amendment is made applicable to the States by the Fourteenth Amendment.

A prisoner seeking relief under the Eighth Amendment based upon receipt of inadequate medical care "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) . A

successful claim under *Estelle* is two pronged: "[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious." *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978).

Neither "mere allegations of malpractice" nor "mere disagreement as to the proper medical treatment" satisfy the deliberate indifference requirement. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). While these are not bases for deliberate indifference on the part of prison officials, there are several scenarios in which the standard can be met. Deliberate indifference exists "[w]here prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Id.* (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976)). It also exists "where 'knowledge of the need for medical care [is] accompanied by the] . . . intentional refusal to provide that care." *Id.* (quoting *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir. 1985). Additionally, "deliberate indifference is demonstrated '[w]hen . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment." *Id.* at 347 (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979). Although a doctor is not immune from liability for deliberate indifference, "it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

To satisfy the second prong of this analysis a medical need must be serious. "A medical need is 'serious' . . . if it is 'one that has been diagnosed by a physician as requiring treatment or

one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *Monmouth* 834 F.2d at 347 (quoting *Pace v. Fauver*, 479 F. Supp. 456, 458 (D.N.J. 1979), *aff'd* 649 F.2d 860 (3d Cir. 1981)).

Prior to incarceration, Bennett received extensive medical treatment for his gunshot wound, including the placement of his leg in a cast.  This treatment was the result of his doctor's diagnosis that he had a broken leg and clearly indicates that his medical need was serious. Therefore, the only prong that requires analysis is whether prison authorities treated Bennett with deliberate indifference.

In *Estelle*, the plaintiff alleged that prison authorities had treated him with deliberate indifference based upon his perception that they failed to adequately treat his back pain.  429 U.S. at 101 & 107.  The plaintiff had injured his back while unloading a prison truck.  *Id.*at 99. Prison authorities dealt with the plaintiff's back pain by sending him to doctors, providing him with pain medication, and allowing him to remain in his cell.  *Id.* at 99-101.  In a span of three months, Gamble was seen by medical personnel on seventeen occasions.  *Id.* at 107.  However, he never received any x-rays or other tests to diagnose his problem.  *Id.*  The plaintiff alleged that prison authorities' failure to provide x-rays and other treatment methods constituted deliberate indifference.  *Id.*

The Supreme Court found that "the question of whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."  *Id.*  The Court stated that "A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.  At most it is medical malpractice . . . ."  *Id.*  Additionally, the Court found that the plaintiff "received extensive medical care and that

the doctors were not indifferent to his needs." As a result of these findings, the Supreme Court

held that the prison authorities did not violate the plaintiff's Eighth Amendment rights.

In this case, Bennett alleges that Defendants treated his medical needs with deliberate

indifference based upon their failure to provide him with surgery. The record reflects that, during

his ten months of incarceration, Bennett received nine x-rays, three orthopedic consultations,

pain medication, physical therapy, daily dressing changes, and additional services during his

numerous sick call visits. This evidence clearly demonstrates that Defendants were not

indifferent to Bennett's medical needs and as found in *Estelle*, Plaintiff "received extensive

medical care." Therefore, there was no intentional refusal to provide care on the part of prison

authorities.

Bennett alleges that regardless of the care he received, prison authorities were indifferent

to his medical needs because he did not receive surgery on his leg. Prior to entering prison,

Bennett's doctor had informed him that he would need surgery once his wound healed. When

Bennett entered prison his wound was not healed and he was not ready for surgery. Surgery was

not recommended during the orthopedic consultations Bennett received on July 28, 2004 and

September 23, 2004. The recommendation for surgery did not come until March 10, 2005. The

record reflects that this surgery was approved of by Defendant Arias. However, before surgery

occurred, Bennett was released from prison on April 20, 2005.

This is not a situation of deliberate indifference where Bennett was denied access to a

recommended treatment. The recommendation for surgery did not come until only a little over a

month before Bennett was released and the record indicates that Bennett was approved for

surgery. Bennett's physicians exercised their professional judgment in their decision of a course

8

of treatment and prison officials executed it without objection.  As held in *Estelle*, the failure to provide a specific course of treatment or diagnosis, in this case surgery, does not constitute deliberate indifference.

The record demonstrates that Bennett received ample medical attention and was not denied a medically recommended procedure. Prison officials were not deliberately indifferent to Bennett's medical needs.  Therefore, I grant Defendants' motions for summary judgment because Defendants treatment of Bennett while he was incarcerated did not violate his Eighth Amendment rights.

## ORDER

        **AND NOW**, on this __15th__ day of December, 2007, **IT IS ORDERED** that Defendant

Knauer's Motion for Summary Judgment (Doc. #51) and Defendant, Felipe Arias, M.D.'s

Motion for Summary Judgment (Doc. #54) are **GRANTED**.


                                                    s/Anita B. Brody

                                            _____
                                            ANITA B. BRODY, J.



Copies **VIA ECF** on _____ to:              Copies **MAILED** on _____ to:




O:\ABB 2007\Bennett Summary Judgment.wpd

10